NATHANIEL RUGGLES vs. THE INHABITANTS OF NANTUCKET.

A person who has no legal title to a house, but merely a parol contract for a deed when he shall have paid the purchase-money, is not an " owner" thereof, before the full amount is paid, so as to allow him to maintain an action, under Rev. Sts. c. 18, § 7, against a town for the destruction of such house in order to prevent the further spreading of a fire.

To maintain such action the owner must show affirmatively and clearly that the destruction of his house was ordered by three firewards, and not merely that they agreed generally that some houses should be demolished, and that the plaintiff's house was selected by one of them.

ASSUMPSIT to recover compensation for a dwelling-house alleged to have been demolished by order of the firewards, in July, 1846, and also for certain goods and furniture, books, medicines, and medical apparatus, alleged to have been in the dwelling-house. The declaration avers that by means of the destruction of the house and furniture, &c., the fire was stopped. At the trial, in this court, before Bigelow, J. the plaintiff offered in proof of title to the dwelling-house, the deposition of Philip H. Folger, by which it appeared that the witness acted as agent of Mrs. Elizabeth Barker, in 1833, when a bargain was made between her and the plaintiff for the sale of said house, for the sum of $2,100, upon the payment of which a deed was to be made by her to the plaintiff; that the plaintiff paid to the witness, Folger, the sum of $400 in April, and $200 in July, 1833, after which time the witness ceased to act as her agent. The witness did not act under any power of attorney, and knew of no writing given by Mrs. Barker to the plaintiff. The plaintiff also offered the deposition of Timothy Hussey, who testified that he received from Mrs. Elizabeth Barker a deed of the premises in 1840, to himself. It was a deed with warranty in the usual form.

The agreement with Mrs. Barker and the witness was, that when the plaintiff paid to the witness the sum of $1,400, or thereabouts, with interest, the witness was to give a deed to the plaintiff. The plaintiff was then and for some time

previous occupying the house. The house was insured by the plaintiff in the name of the witness, and after the fire the sum of $1,200 was received from the insurance office by the witness, and placed to the credit of the plaintiff. Afterwards, in 1847, the plaintiff paid to the witness the balance due on account of the property, and, at the plaintiff's request, a deed of the premises was made by the witness to Henry C. Macy, who was about building a house on the premises for plaintiff, and the plaintiff offered in evidence a copy of a deed from Macy to himself, conveying the property to him. This deed is dated August 2d, 1847. There is no written obligation from Hussey to convey the estate to the plaintiff at any time. It was contended on the part of the plaintiff that in July, 1846, the plaintiff, although he had no legal title, yet had such equitable interest in the property as would support this action.

For the purpose of proving that the house was demolished by order of three firewards, the plaintiff offered as a witness Jesse Coffin 2d, who testified that he was one of the firewards of Nantucket in 1846, and that on the night of the fire, at about eleven o'clock, just as the fire was breaking through the building first on fire, he and seven or eight other firewards had a conference. There were twenty firewards in all. Of the firewards present at this conference, two were engineers. It was concluded to blow up some buildings to stop the fire, but no building was fixed upon or named at the conference. Obed Swain was engineer of the powder depot, and Isaac B. Woodward, (a fireward,) and the witness were under him. When this conclusion was arrived at, the firewards separated, and went to their several posts. The witness procured some gunpowder, and he and Obed Swain and Isaac B. Woodward first blew up the Hussey house, and then went up Federal street and blew up several houses, and used up all their powder. This witness was not in the section of the town where the plaintiff's house was situated, and knew nothing about its being blown up.

John P. Hussey, who was not a fireward, called by the plaintiff, testified that he blew up the plaintiff's house. He was ordered to do so by Edwin Coffin, whom he considered

chief engineer. Edwin Coffin was a fireward, and was present at the conference testified of by the former witness. The first keg only canted the house over to the westward, and broke away some of the underpinning. Witness procured another keg and blew up the house. No one gave any directions but Mr. Coffin. This was done at about two o'clock in the morning.

It was proved by the deposition of Philip H. Folger, and admitted, that the house of the plaintiff fronted west upon Orange street. The house next north on the street was burned down after plaintiff's house was blown up, and the houses on the street next south of the plaintiff's were also destroyed by fire. The house of Mr. Folger was upon the opposite side of Orange street from the plaintiff's, and was directly opposite the house next north of the plaintiff's which was consumed. Folger's house was a brick house and slated. It had wooden cornice work in front of it. This wood-work was on fire once or twice, but was extinguished, and the house itself did not burn down. And it was proved that no houses were destroyed on the west side of Orange street. The house next to Folger's was of brick, with a shingle roof.

The plaintiff contended that upon this evidence it would be competent for the jury to find that the demolition of the plaintiff's house was the means of stopping the fire in that direction. The presiding judge withdrew the case from the jury, and if, in the opinion of the whole court, the plaintiff can, upon the foregoing facts, maintain his action for the value of the house, or of the furniture therein, a new trial is to be had; otherwise the plaintiff is to become nonsuit

*T. G. Coffin*, for the plaintiff.

*T. D. Eliot*, for the defendants.

BIGELOW, J. The defendants can be held responsible in this case solely under Rev. Sts. *c.* 18, §§ 4, 7, by which it is provided that towns shall be liable in certain cases for the value of buildings which are " pulled down or demolished, in order to prevent the further spreading of a fire." Unless, therefore, the evidence offered by the plaintiff at the trial brings his case within these provisions, he cannot recover in

this action. *Taylor* v. *Plymouth*, 8 Met. 465. Upon looking at the evidence, it is clearly insufficient to establish two essential facts, which lie at the foundation of the plaintiff's claim. By section 7 the right to recover compensation is given only to the " owner " of the house or building destroyed. In this case, it does not appear that the plaintiff was the owner at the time of the fire. On the contrary, the evidence shows that he then had neither a legal or equitable title to the premises. The legal estate was in Timothy Hussey, and the plaintiff had no right to a conveyance of it, under his agreement for its purchase, until he had paid the entire purchase-money. But he had in fact paid only $600 towards it, and $1,400 were still due. He had not, therefore, such a right as would enable him to claim and enforce a conveyance from the owner of the legal estate. Assuming the ground taken by the plaintiff to be correct, upon which we express no opinion, that a full and clear equitable title would come within the provisions of the statute, so that a *cestui que trust* could be considered an owner, and entitled to claim compensation, it is clear that the plaintiff did not hold even such a title to the estate at the time of the fire. He can, therefore, in no proper sense be deemed its owner, so as to maintain this action.

An equally fatal defect in the plaintiff's proof is, that he does not show that the house was destroyed by the order of three firewards, as is required by section 4. The plain intent of the statute is, that no house or building shall be demolished, unless it shall be judged necessary by three firewards, or by the other officers authorized to act in their absence, or where no firewards have been appointed. It is the united judgment of the officers to whom the power is given, acting upon the immediate exigency, and determining the necessity, which is contemplated by the statute. Its language is capable of no other reasonable interpretation. It is a joint authority expressly given to the officers designated, acting together, and cannot be exercised by a minority, or by any one of them. It is not sufficient, therefore, that a general conclusion or judgment was arrived at by three fire

wards or the other officers mentioned, that it was necessary to destroy some buildings in order to put a stop to the further extension of a fire. They must go further. They must determine upon the particular house or building which they shall adjudge necessary to be destroyed for the purpose. This cannot be left to the individual judgment of any one of the firewards. *Coffin* v. *Nantucket*, 5 Cush. 269. In the case at bar, the evidence fails to show any joint judgment of the firewards, as to the necessity of destroying the house, the value of which the plaintiff seeks to recover in this action. It was done upon the judgment and direction of one fireward only. On this ground it is clear that the plaintiff fails to make out his case. *Plaintiff nonsuit.*